UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

*************************************
In re:                                )
    Nancy Cook McDonald and            )    Chapter 7
    Richard C. McDonald, Jr.,          )    Case No. 08-21208
        Debtors                        )
*************************************

## Memorandum of Decision

### I. Introduction

Before me is the chapter 7[1] trustee's motion for an order approving a compromise and settlement (the "Compromise Motion") between the debtors' estate and Farrand O'Donoghue ("FMO"), individually and in various capacities relating to a trust created by Richard McDonald, Sr. ("RCM Sr."). For the reasons that follow, I will grant the Compromise Motion as orally amended on the record at a hearing held June 7, 2010.[2]

### II. Background

**1.  Claims**

FMO is the sister of the co-debtor Richard McDonald, Jr. RCM Sr. is the settlor and beneficiary of a spendthrift trust (the "Trust"), of which both FMO and the debtor are contingent beneficiaries. FMO is the trustee of that Trust, the debtor, Richard, having agreed to relinquish his position as co-trustee pursuant to a consent order entered in South Carolina state court. FMO

---

[1] Unless otherwise indicated, citations to statutory sections and to chapter numbers refer to those with the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code" or "Code").

[2] The only amendment to the terms of the Compromise Motion as filed, following an opportunity for the debtors and FMO to make their best offers, was an increase in the cash payment to the trustee, from $8500 to $15,000.

1

has also been appointed as the guardian of RCM Sr.

Following the debtors' chapter 7 filing, a complaint seeking to establish the non-dischargeability of certain debts was filed on behalf of RCM Sr. and the Trust by FMO in her various representative capacities. The complaint asserted that the debts in question were excepted from discharge under § 523(a)(2) (fraud), § 523(a)(4) (fiduciary defalcation and embezzlement), and § 523(a)(6) (willful and malicious injury to property).

The debtors answered the complaint, and counterclaimed. Four of the five counterclaim counts are asserted against FMO in her individual capacity. They allege FMO's conversion of trust assets and interference with the debtor's future inheritance (counts I and II), and FMO's perjury in the South Carolina court proceedings (both counts designated as IV). The fifth count seeks an accounting with respect to the Trust.

FMO moved to dismiss the counterclaims on numerous grounds, including the debtors' lack of standing. The debtors responded by seeking derivative standing to pursue the claims on behalf of the bankruptcy estate to the extent they constituted estate property.[3] The debtors also filed a motion for contempt against FMO, alleging that action she took in the courts of the District of Columbia regarding the Trust violated the automatic stay and the discharge injunction.

**2.    The Compromise**

The trustee filed the Compromise Motion on January 27, 2010, and the parties have since spent considerable time attempting to work through all of the issues presented by the myriad

---

[3] In doing so the debtors equivocated regarding the extent to which the claims constituted property of the estate.

2

pleadings in this case. None of the pending matters has yet been ruled upon, although the parties did request that I provide them with a preliminary opinion whether the counterclaims constituted property of the estate. I did so orally, indicating to the parties that, based upon the undisputed facts of record and my own research, I believed that the Trust appeared to be a valid spendthrift trust and that the debtor's future interest in the Trust, as well as any future inheritance from RCM Sr., would not constitute property of the estate.[4]

The trustee subsequently brought the Compromise Motion forward. In the course of prosecuting his motion, the trustee provided the debtors and FMO each the opportunity to make their best proposal for disposition of the estate's interest in, *inter alia*, any and all causes of action that the estate might hold against FMO, individually or in any representative or fiduciary capacity.[5]

At a hearing held June 7, 2010, the trustee reported that he had determined the offer of FMO, for $15,000 cash and various other considerations,[6] to be the highest and best offer. The debtors objected, contending that the trustee had not properly exercised his business judgment by rejecting their own offer. The debtors represented that they were prepared to pay $8700 in cash, but with the promise that any eventual recovery on account of the causes of action against FMO would inure to the benefit of the estate. They also promised to fund the prosecution of those claims.

---

[4] See part III.B., infra.

[5] See 11 U.S.C. §§ 105(a), 363(b); Fed. R. Bankr. P. 9019. The trustee had previously expressed, repeatedly and on the record, his belief that the highest and best offer would be the one that contained the greatest immediate cash contribution to the estate.

[6] FMO agreed to other terms as well, but the debtors matched her offer in all ways other than those discussed here.

### III.  Analysis

**A.     Standing**

Before discussing the merits of the proposed compromise, I must first address whether the debtors have standing to raise a challenge to it.  See Spenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st Cir. 2001) ("In the normal course . . . the bankruptcy or district courts must make the required 'person aggrieved' determination in the first instance, which entails a factual inquiry . . . ."). "The 'person aggrieved' paradigm . . . bestows standing only where the challenged order directly and adversely affects an appellant's pecuniary interests." Id. at 117-18, citing Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1142 n.9 (1st Cir. 1992).

> The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case.  Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property.

Id. at 118, citing, *inter alia*, In re El San Juan Hotel, 809 F.2d 151, 154-55 (1st Cir. 1987).

The debtors bear the burden of establishing their standing.  Id., citing, *inter alia*, Alfaro v. Vazquez (In re Alfaro), 221 B.R. 927, 931-32 (B.A.P. 1st Cir. 1998).  To do so, they "must adduce sufficient evidence to demonstrate that the challenged order directly and adversely affects the chapter 7 debtor's pecuniary interests, notwithstanding the fact that he no longer has title to the property." Id. at 119.  More specifically, the debtors must show that if the trustee were to accept their bid instead of FMO's, it would likely result in "an overall surplus in the chapter 7 estate - *viz.*, a total nonexempt-asset valuation exceeding all allowed claims against the chapter 7 estate - to which the debtor, *qua individual*, would become entitled once the

4

bankruptcy case is closed." Id. (citations omitted).

In what appears to be an attempt to establish standing, the debtors have opined about the amount of the claims to be paid before they would be entitled to a surplus distribution:

> The Trustee's claim that over $2 million would have to be received to generate a surplus is simply wrong.  First, the Trustee includes over $1 million in alleged claims of FMO and the trust.  *If the litigation against FMO is successful*, all such claims will be disallowed.  In addition, secured claims, totaling in excess of $1,600,000 have already been eliminated or reduced *or will be upon objection.*  Should the Trustee not object to such claims, the Debtors *would* seek derivative standing to do so.  Unsecured claims, other than FMO [sic], total less than $115,000.  Even adding a possible deficiency on secured debt, which is unasserted and to which the Debtors *would* object, the total claims, other than FMO's and the trust's claims, are under $700,000.  The Debtors *contend* they are less than $120,000.  The value of the causes of action, the trust interest, and other assets involved in the proposed settlement exceed either amount.

(Objection to Trustee's Mot. for an Order Approving Compromise and Settlement, at p. 2 n.1) (emphases supplied).  In addition, they assert that "[t]he pre-petition claims and causes of action of the Debtors, some of which have been pled as counterclaims in the dischargeability case and some of which remain to be asserted, have a likelihood of recovering high-six figure, if not seven-figure, damages and exemplary damages." Id. at p. 2.

However, nowhere have the debtors produced any evidentiary support for their claim to standing.  See Spenlinhauer, 261 F.3d at 119 ("Instead of disputing the procedural deficiency noted by the chapter 7 trustee, the chapter 7 debtor merely mustered the conclusory statement that, but for the $500,000 sale to the Purchasers, 'it is very likely that we would have created value that would have devolved to [the chapter 7 debtor].'").  The debtors have sought to take FMO's deposition and requested the production of documents relating to all pending matters,

5

asserting that such discovery is necessary, *inter alia*, to value the debtors' counterclaims. (Debtors' Mot. to Compel, at p. 3 ¶6). But even absent discovery and a more precise valuation of the counterclaims,[7] the debtors could have provided some evidentiary support for their position - e.g., an affidavit setting forth the grounds for the as-yet-unasserted claims to which they have made reference, or some other justification for their belief that the value of those claims approaches $1 million. Cf. In re Varrasso, 37 F.3d 760, 763 (1st Cir. 1994) (discussing a summary judgment movant's requirement to "proffer materials of evidentiary or quasi-evidentiary quality - say, *affidavits* or depositions - that support his position" (citations omitted) (emphasis supplied)).

As it stands, the first and only reference to any prepetition causes of action the debtors might hold against FMO, other than those stemming from her alleged interference with the debtor's trust expectancy and/or inheritance, appear in their objection to the trustee's motion to compromise.[8]

That the debtors believe they have standing and said so (albeit loudly) is not enough to sustain their burden. See Spenlinhauer, 261 F.3d at 119.

**B.    Reasonableness of the terms of the compromise**

Although I conclude the debtors have not successfully proven their standing, in an abundance of caution I will assay the merits of the compromise.

---

[7] Valuation will be addressed in more detail, infra at part III.B.

[8] "The Debtors also have valuable causes of action against [FMO] for abuse of process, slander, and defamation, all of which allow for punitive or exemplary damages under applicable law." (Objection to Trustee's Mot. for an Order Approving Compromise and Settlement, at p. 10).

6

I may only approve a compromise if it is in the best interests of the estate.  See, e.g., Knowles v. Putterbaugh (In re Hallet), 33 B.R. 564, 565 (Bankr. D. Me. 1983).  "The bankruptcy court essentially is expected to 'assess [ ] and balance the value of the claim[s] . . . being compromised against the value . . . of the compromise proposal.'"  Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 50 (1st Cir. 1998), quoting Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995).  The factors to be considered in assessing a trustee's motion to compromise include:

> (i) the probability of success in the litigation being compromised;
>
> (ii) the difficulties, if any, to be encountered in the matter of collection;
>
> (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and,
>
> (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

See, e.g., Id. at 50; Jeffrey v. Desmond, 70 F.3d at 185.  "The experience and competence of the fiduciary proposing the settlement" is also to be taken into account.  In re Healthco, 136 F.3d at 50.  Ultimately, "the responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."  Id. at 51 (quotation omitted).

The trustee has focused his arguments in favor of the Compromise Motion on the fact that the asserted counterclaims do not appear to constitute property of the estate.  I agree with the

7

trustee that the Trust is a valid spendthrift trust,[9] and thus such interests as the debtor may claim in it are not property of the estate. See 11 U.S.C. § 541(c)(2) ("A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."). Furthermore, it is clear that the debtor's future inheritance does not constitute property of the estate. See 11 U.S.C. § 541(a)(5)(A); see also, e.g., Holter v. Resop (In re Holter), 401 B.R. 372, 376 (Bankr. W.D. Wis. 2009). And even if the debtors' second counterclaim, for "Intentional Interference with Gift/Inheritance," were property of the estate, I believe that count is without merit.[10]

The debtors have recently given the impression that they concede the counterclaims are not property of the estate (and therefore valueless to the trustee), and suggest that it is their as-yet-unasserted state law tort claims which the trustee has not properly valued for purposes of the Compromise Motion.

The debtors argue that, because of his failure to engage in formal discovery relating to their as-yet-unasserted state law tort claims,[11] the trustee has not adequately valued those causes of action, and that therefore his decision to compromise cannot be reasonable. But neither the trustee nor I are "obliged to fix the value of the . . . claim[s] with near mathematical precision before [they] can be settled." See In re Healthco, 136 F.3d at 51, citing In re Thompson, 965

---

[9] See S.C. Code Ann. § 62-7-502 (2005) (establishing the requirements for a valid spendthrift trust under South Carolina law, which is applicable to the Trust at issue in this case).

[10] "South Carolina has apparently never recognized a claim for interference with inheritance rights." Douglass ex rel. Louthian v. Boyce, 336 S.C. 318, 327, 519 S.E. 2d 802, 807 (S.C. App. 1999).

[11] Although he has investigated, the trustee concedes that he has conducted no formal discovery relating to these alleged causes of action; he has not deposed the debtors.

F.2d at 1145. Indeed, such a requirement "overlook[s] . . . the reality that many, if not most, claims settled in bankruptcy proceedings are not amenable either to ready or exact valuation in the abstract. Id., citing, *inter alia*, In re Energy Coop., 886 F.2d 921, 929 (7th Cir. 1989) ("'[A]n exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'" (citation omitted)).

> When augmentation of an asset involves *protracted investigation* or potentially costly litigation, *with no guarantee as to the outcome*, the trustee must tread cautiously - and an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle.

Leblanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 212 F.3d 632, 635 (1st Cir. 2000) (emphases supplied), citing In re Healthco, 136 F.3d at 50-52.

The trustee has noted the debtors' failure to schedule any causes of action other than those related to the Trust as justification for his low valuation of any such claims (i.e., the as-yet-unasserted state law tort claims).[12]  But the trustee has considered the unscheduled claims.

He points to the extensive amounts of litigation between these hostile siblings and related entities which pend, or have pended, in three different forums (Maine, South Carolina, and the District of Columbia), and the contentions and defenses of questionable merit that the debtors have put forth at various times.[13]  The trustee suggests that these facts demonstrate the debtors'

---

[12]  The debtors' schedule B lists only "Possible claims against [FMO] relating to Trust Agreement dated 12/9/1996, as amended by the First Amendment and Restatement of Trust Agreement dated 7/12/2004." The trustee has also made clear that the debtors' raising these additional claims when they did, only in opposition to the Compromise Motion, causes him to have serious doubt about their merits.

[13]  The debtors have taken inconsistent positions as to whether the counterclaims are property of the estate. At one point, they suggested that the Trust might be unfunded.

"strong interest in delaying the conclusion of the litigation," (Compromise Motion, at p.14 ¶44), and also asserts that the fact that the debtors have already declared bankruptcy due to an inability to fund the prepetition litigation cuts against the value of their offer to bear the costs of that litigation now.[14]

I agree with the trustee's assessment that there is a low probability of success pursuing the purported state law tort claims against FMO, both on the merits and because of the debtors' inability to fund the litigation.  It is also clear that any such litigation would necessarily be complex and convoluted, given the status of the record in this case as well as the history and status of proceedings in the South Carolina and D.C. courts.

As to whether any judgment eventually entered against FMO could be collected, I again share the trustee's doubts.  FMO's own litigation costs must necessarily be high already, and the bitterness of this family dispute leaves no doubt that she will only continue incurring significant legal fees as it drags on.  The spendthrift provisions of the Trust necessitate that she would not have recourse to Trust funds if any judgment were to be entered against her individually.  For these reasons, there are serious questions as the whether the trustee would ever realize any benefit from the litigation if it was pursued to its end.  And in any event, that end would doubtless be a long time hence.

Thus, if the debtors' had standing, I would nevertheless conclude that the trustee's decision to compromise with FMO for $15,000 in cash, rather than with the debtors for $8700 in cash and the promise of future monies if any are recovered in pursuit of claims, was a proper

---

[14] Just a couple months ago, when I invited the debtors to better FMO's initial cash offer, their counsel stated they were financially incapable of doing so.

exercise of the trustee's business judgment, which falls well above the "lowest point in the range of reasonableness." In re Healthco, 136 F.3d at 51.[15]

The cases assembled by the debtors for support are of scant help to them. This is not a case where my rationale is uninformed, unexpressed or unclear. See Kayo v. Fitzgerald, 2004 WL 206323 (2d Cir.). Nor is it a case where potentially strong claims have been disregarded or confused with weak ones. See Reiss v. Hagmann, 881 F.2d 890 (10th Cir. 1989).

In re Goldstein is inapposite. Here the trustee has not overlooked a simple document review that would answer readily questions about the compromised claims. See 131 B.R. 367 (Bankr. S.D. Ohio 1991). Neither is this case like In re Gregerson, 311 B.R. 857 (Bankr. N.D. Iowa, 2004), where the compromise would have effectively sold the debtor's shares in two family-owned corporations, but the trustee had not informed himself - or the court - of easily discoverable facts pertinent to valuation. See also In re The Present Co., Inc., 141 B.R. 18 (Bankr. W.D. N.Y. 1992) (rejecting a "take our word for it" compromise proffered by insiders).[16]

---

[15] My conclusion is further buttressed by the fact that the trustee is highly competent, highly experienced, and is represented by excellent counsel.

[16] Similar reasons distinguish the cases cited by the debtors from within the First Circuit. See In re 110 Beaver Street P'ship, 244 B.R. 185 (Bankr. D. Mass. 2000) (court refused to accept trustee's valuation of various claims where the court felt there was a "real possibility" of higher recovery than proposed and where the estate was "likely to establish liability," in part because another court had already granted a preliminary injunction); In re Amirault, 2000 WL 33679415 (Bankr. D. N.H. 2000) (record suggested that debtor might have rights under a prenuptial agreement that compromise would terminate); In re Greenacre, 103 B.R. 1 (Bankr. D. Me. 1989) (court believed trustee had "completely discounted and/or ignored" debtor's negligence claims in seeking to compromise them for $32,500 to cover administrative and unsecured claims when that lawsuit claimed damages in excess of $10 million).

## IV. Conclusion

For the reasons set forth above, I conclude that the debtors have not demonstrated standing to oppose the trustee's compromise. Moreover, after considering all arguments opposing the compromise, I conclude that the trustee's exercise of business judgment in compromising the estate's claims against FMO on the terms set forth in the trustee's Compromise Motion, as amended orally at the June 7, 2010 hearing,[17] is reasonable. The Compromise Motion is granted. A separate order to that effect will enter forthwith.

Dated: June 11, 2010

/s/ James B. Haines, Jr.
_____
Hon. James B. Haines, Jr.
U.S. Bankruptcy Court Judge
District of Maine

---

[17] See supra, note 2.